## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-80020-CIV-HURLEY

AMERICAN HOME ASSURANCE COMPANY,
        plaintiff,
vs.

RAP TRUCKING, INC. and
SHOWTIME ENTERTAINMENT TRANSPORT LLC,
        defendants.
                                                                          /

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### & DENYING DEFENDANT RAP TRUCKING, INC.'S MOTION
### FOR SUMMARY JUDGMENT

Plaintiff American Home Assurance Company, as subrogee of Multi Image Group, Inc. ("MIG"), a shipper, brings this action under the Carmack Amendment to the Interstate Commerce Act against an interstate carrier for losses resulting from late delivery of specialized trade show equipment. The case is now before the court on the parties' cross-motions for summary judgment [DE# 19, 27]. For reasons stated below, the court has determined to grant the plaintiff's motion and to accordingly enter final summary judgment in its favor.

### Fact Background[1]

Plaintiff American Home Assurance Company ("AHAC") issued a "Marine Open Cargo Policy" of insurance to the Multi Image Group, Inc. ("MIG"), located in Boca Raton, Florida, on April 16, 2007. The policy covered transit risk of loss for all shipments of goods and merchandise incidental to the business of the insured.

---

[1]The material facts, drawn from the plaintiff's complaint and the parties' Local 7.5 statements, are either undisputed or taken in the light most favorable to the defendant, unless otherwise noted.

On August 23, 2008, MIG contracted with the W. Wrigley, Jr. Co. ("Wrigley") to produce and stage Wrigley's 2008 National Sales Marketing convention scheduled for February 11 through February 15, 2008 at the O'Hare Hyatt Regency Hotel in Rosemont, Illinois. The contract called for MIG to unload and set up all necessary audio and visual equipment on February 10, 2008, the day before the convention opened.

MIG solicited a bid from Showtime Transportation Transport LLC ("Showtime"), a Texas shipping broker, to arrange for transportation of its staging equipment from Florida to Illinois. MIG specifically advised Showtime of the purpose of the delivery, the staging of the Wrigley sales convention, and sent shipping instructions specifying a pick up date at MIG's facility in Florida for 1 p.m. on February 7, 2008, a delivery date at the Hyatt Regency in Illinois for 7 a.m. on February 10, 2008, and a return date at MIG's facility in Florida for 9 a.m. on February 18, 2008.

Showtime, in turn, subcontracted with RAP Trucking Inc. ("RAP"), an interstate carrier specializing in transport of cargo for trade shows, concerts and game shows. RAP had transported other trade show equipment for Showtime in the past and was advised of the specific purpose of the MIG delivery and the importance of timely delivery prior to day one of the Wrigley convention.

On February 6, 2008, Showtime sent a "Load Confirmation and Rate Agreement" form to RAP. This Agreement required RAP to deliver MIG's cargo (audio visual equipment, road cases, trussing, staging etc.) to the Hyatt Regency O'Hare in Rosemont, Illinois by February 10, 2008 at 7:00 a.m., the day before the convention opened, and contained the following language prominently displayed in a box set in the middle of the form:

**VERY IMPORTANT!**

**SHIPMENT IS _VERY_ TIME SENSITIVE.  ALL DATES AND TIMES ARE MANDATORY. Any deviations from this agreement must be reported immediately to 972.923.1555. <u>ANY TARDINESS</u> COULD RESULT IN A FEE TO CARRIER.**

RAP gave a copy of the  Load Confirmation and Rate Agreement to its driver, along with a map to MIG headquarters in Florida and a map to the Hyatt Hotel in Illinois.  At the time of pick up in Boca Raton,  the driver filled out a bill of lading confirming that  the load was going from MIG in Boca Raton, Florida  to the Hyatt Regency Hotel  in Rosemont,  Illinois  with a scheduled delivery date of February 10, 2008 at 7 a.m.

Just hours before the scheduled delivery time, on  Sunday, February 10, 2008 at  4:11 a.m., the RAP truck driver, Randy Gross, braked and veered in effort to avoid an unlit vehicle which abruptly pulled off the shoulder of the highway into his path of travel.  The RAP truck ultimately collided with the vehicle and rolled over into a roadside ditch.  RAP learned about the  accident from the Illinois State Police at about 7:45 a.m. and  immediately began  making arrangements to provide substitute transport  service, engaging two other trucking companies in Illinois to travel to the accident  site and  unload the MIG equipment for final  transport to the Hyatt Regency O'Hare.  However, when the other carriers arrived shortly after on that same day,  the Illinois State Police and Illinois DOT turned   them away from the accident scene.

By this juncture,  MIG was completing its arrangements to cover by  renting substitute  audio and visual equipment needed  for the Wrigley convention staging.  The cost of this cover, over the course of the four day convention, totaled  $149,802.36.  In the meantime,  it was not until Tuesday or Wednesday, February 12 or 13th, that RAP was finally allowed to approach the overturned RAP

truck, offload its contents and ship them back to MIG through another carrier ("Extreme").  On February 15, 2008, Extreme delivered the first of two loads from the crash site.  On February 29, 2008, Extreme delivered the balance of the cargo to MIG in Boca Raton.

MIG filed an insurance claim for its loss under a marine cargo policy issued by American Home Assurance Company (AHAC).  AHAC assessed $15,144.25 on the claim for direct physical losses (labor costs to recover, test and repair the recovered equipment) and $149,802.36 for indirect losses (cost of substitute equipment/labor plus $1,100 in rental van and parking costs). AHAC thus assessed the total covered loss at $165,969.84, and, after applying a $2,500 policy deductible, paid $163,469.00 to MIG upon its claim.

On January 1, 2009, AHAC, as subrogee of MIG, filed the instant suit under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706(a)(1) against RAP (Count 1) and Showtime (Count 2) seeking to recover MIG's indirect losses as either general or special damages flowing from RAP's delay in transport.  The case is now before the court on AHAC and RAP's cross motions for summary judgment.

## Discussion

The Carmack Amendment governs liability for loss, damage or injury to property transported in interstate commerce.  49 U.S.C. §14706; *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 57 S. Ct. 73, 81 L. Ed. 20 (1936).  Accordingly, the Carmack Amendment governs AHAC's subrogated claim for damages resulting from RAP's delay in transit in this case.

The Carmack Amendment allows a shipper to recover damages from a carrier for "actual loss or injury to the property" resulting from the transportation of cargo in interstate commerce. 49 U.S.C. §14706(a)(1).  A carrier's liability under the Carmack Amendment includes all reasonably

foreseeable damages resulting from the breach of its contract of carriage, "including those resulting from non-delivery of the shipped goods as provided by the bill of lading.*"*

49 U.S.C. §14706(a)(1); *Air Products & Chemicals, Inc. v Illinois Central Gulf R. Co.*, 721 F.2d 483 (5th Cir. 1983), cert. den., 469 U.S. (1984).

To establish a *prima facie* Carmack Amendment claim under against an interstate common carrier, a shipper must prove: (1) delivery of goods in good condition; (2) arrival in damaged condition (or delayed arrival); and (3) damages. *Missouri Pacific R. Co. v Elmore & Stahl,* 377 U.S. 134, 84 S. Ct. 1142, 12 L. Ed.2d 194 (1964).

Once a shipper states a *prima facie* case against a common carrier, the burden of proof shifts to "the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Id*. The five "excepted causes" which operate to relieve a carrier from liability in the absence of its own negligence are: (1) act of God; (2) act of public enemy; (3) act of shipper itself; (4) act of public authority, or (5) inherent vice or nature of the goods. *Id.* At 137. *See also Beta Spawn, Inc. v FFE Transportation Services, Inc.,* 250 F.3d 218, 226 (3d Cir. 2001)*; Martin Imports v Courier-Newsom Express, Inc.* 580 F.2d 240, 242 (7th Cir. 1978)(observing "the law places upon the carrier a substantial double burden in order to avoid liability"); *Rankin v Allstate Ins. Co.,* 336 F.3d 8 (1st Cir. 2003)(describing Carmack Amendment as "impos[ing] something close to strict liability upon originating and delivering carriers"); *Tokio Marine & Fire Ins. Co. Ltd. v Amato Motors, Inc*., 996 F.2d 874 , 876 n. 6 (7th Cir. 1993)(statute "incorporated common law principles relating to liability of interstate carriers, which was that carriers were liable for loss or damage to goods essentially without regard to fault).

In other words, the statute codifies the common law rule that a carrier, though not an

absolute insurer, is liable for damage to goods transported by it,  unless  it can  show the damage was

caused by interference by human forces outside the control of either the shipper or the carrier.  For

example, declarations of martial law, embargoes, quarantine restrictions, strikes and riots  excuse

carrier liability under the enumerated exceptions.  *Delta Research Corporation  v EMS, Inc.*,  2005

WL 1981775 (E.D. Mich. 2005).

The Carmack Amendment is "comprehensive enough to embrace all damages resulting from

any failure to discharge a carrier's duty with respect  to any part  of the transportation  to the agreed

destination," *Southeastern Express co. v Pastime Amusement Co.*, 299 U.S. 28, 29 (1935).  Both

general  and special damages may  be recovered as consequential damages under the Carmack

Amendment.  *Paper Magic Group, Inc. v  J.B. Hunt Transport,  Inc.,* 318 F.3d 458 (3d Cir. 2003).

General damages are those that are  reasonably foreseeable at the time of contracting.  *Hector*

*Martinez Co v Southern Pacific Transp. Co.*, 606 F.2d 106 (5th Cir. 1979).  Special damages, in

contrast, are those unusual or indirect costs that, although caused by the defendant's conduct in a

literal sense, are beyond that which  one would reasonably expect to be the ordinary consequences

of a breach.  As a general rule, they are  recoverable from a carrier only when it has notice or

knowledge of the special circumstances from which such damages would flow. *Contempo Metal*

*Furniture Co. of California v East Texas Motor Freight Lines, Inc.*, 661 F.2d 761 (9th Cir. 1981).[2]

---

[2] Compare *Alpine Ocean Seismic Survey, Inc. v.  F.W. Myers & Co.*,  23 F.3d 946 (5th Cir. 1994)(carrier not liable for cost of replacing microorganisms killed as a result of late delivery where it was unaware of contents of boxes  and could not have reasonably foreseen the need of shipper to retrieve  replacements from ocean floor) with  *Texas A & M  Research Foundation v Magna Transportation, Inc.,*  338 F.3d 394 (5th Cir. 2003)(carrier  liable for special damages  related to late delivery of  specialized equipment for oceangoing research vessel, where transportation broker had actual notice of importance of timely delivery,  knew purpose of project for which equipment was intended, and had previously  worked with shipper on time sensitive deliveries).

6

In this case, plaintiff asserts that the undisputed facts establish the foreseeability of its cover costs as a matter of law, rendering these losses recoverable as general damages, or alternatively, as special damages. RAP argues that MIG cannot recover its indirect losses as consequential damages because these damages were not specifically foreseeable to RAP at the time it issued the bill of lading. That is, it claims that it was only apprized that a delay in delivery "could" result in a "fee," and that while it might have anticipated that delay in transit would result in additional labor costs, it was not reasonably foreseeable to it that MIG would incur rental replacement costs.

Damages for delay in shipment are available under the Carmack Amendment when the harm "was not so remote as to make it unforeseeable to a reasonable person at the time of contracting." *Hector Martinez*, 606 F.2d at 110. In this case, MIG's claim for indirect or consequential losses includes the following damages caused by RAP's late delivery: (1) cover cost of renting substitute staging equipment ; (2) increased transportation costs (parking and rental van costs).

Viewing the evidence in the light most favorable to RAP, the court concludes, as a matter of law, that at the time the bill of lading was issued by RAP each of the above losses should have been a reasonably foreseeable consequence of a delivery delay. *See e.g. New Process Steel Corporation v Union Pac. R.R. Co.,* 91 Fed. Appx. 895 (5th Cir. 2003); *National Hispanic Circus, Inc v Rex Trucking, Inc*., 414 F.3d 546 (5th Cir. 2005). The record unequivocally reveals that RAP was an experienced shipper in trade show equipment, had worked with Showtime before on time sensitive deliveries, accepted delivery of MIG's cargo in this case under a Load Confirmation & Rate Agreement which read, in highlighted bold type, under the caption "Very Important!," that shipment was "very time sensitive,"and was actually aware of the intended use of the equipment for staging a national sales convention at a date and time certain. Given RAP's uncontroverted notice

of these circumstances,  RAP reasonably have known and expected  that MIG would be forced to obtain substitute equipment to timely stage the production in  the event RAP failed to make its delivery on time,  and that once MIG  incurred those staging costs and set up the staging it would not be feasible  to dismantle the rental  equipment  before the end of the Wrigley convention.

No reasonable juror could conclude otherwise on these undisputed facts; the court thus finds, as a matter of law, that plaintiff has established a *prima facie claim* Carmack Amendment claim for recovery of its  cover costs as special damages. *See Texas  A & M Research Foundation v Magna Transportation, Inc*., 338 F.3d 394 (5th Cir. 2003), *supra.  Compare Main Road Bakery, Inc. V Consolidated Freightways, Inc.,* 799 F. Supp. 26 (D. N. J. 1992)(dismissing claim for special damages under Carmack Amendment where carrier did not have notice at time bill of lading was made that bakery would dissemble its existing oven in preparation of delivery of new one)

The examination accordingly turns to the issue of whether RAP is able to identify any genuine issue of material fact on a legally valid  affirmative defense to the claim so as to preclude entry of summary judgment upon the claim.  As noted above, once a shipper establishes its prima face case under the Carmack Amendment, a carrier is liable for all damages to goods in transit unless it can prove that it was not negligent *and* that the damage was caused by an act of God; act of public enemy; act of shipper; act of public authority  or the inherent nature or vice of goods. *Tokio Marine & Fire Ins. Co. Ltd. v.  Amato Motors, Inc.,* 871 F. Supp. 1010 (N.D. Ill. 1994); *Case W. Res. Univ. v Yellow Freight System., Inc.* 619 N.E.2d 42 (Ohio App. 1993);  *RTC Transport, Inc. V Walton*, 864 P.2d 969 (Wash. App. 1994).

The recognized exceptions to carrier Carmack Amendment liability do not include third party negligence; intervening criminal conduct; assumption of the risk or break in chain of proximate

cause.  *See e.g. Malone v Mayflower Transit, Inc*., 819 F. Supp. 724 (E.D. Tenn. 1993)(Carmack Amendment  preempts state common law causes of action and related  common law defense of comparative negligence).

RAP's reliance on the United State Supreme Court's opinion in  *Exxon Co., U.S.A.  v Sofec, Inc.*,  517 U.S. 830, 116 S. Ct. 1813, 135 L. Ed.2d 113  (1996) for a contrary result  is misplaced. *Exxon* involved application of  proximate cause concepts  and related superseding cause doctrine to in an admiralty case involving negligence and breach of warranty claims lodged by an oil tanker owner against the owner, operator and manufacturer of  mooring facility.

Admiralty  law recognizes a general theory of liability for negligence,  incorporating principles of products liability, including strict liability. *East River S.S. Corp.  v Transamerica Delaval,  Inc*., 476 U.S. 858, 106 S. Ct. 2295, 90 L. Ed.2d 865  (1986).  Carmack Amendment liability, conversely, is not premised on negligence law.  Indeed, most courts, including the Eleventh Circuit, hold that Carmack Amendment preempts state and common law remedies against common carriers, including negligence claims.  *See Smith v United Parcel Service*, 296 F.3d 1244 (11th Cir. 2002) and cases cited *infra.  See also Hughes Aircraft v North American Van Lines,* 970 F.2d 6090, 611 (9th Cir. 1992)("[t]he Carmack Amendment ... subjects a motor carrier transporting cargo in interstate commerce to absolute liability for 'actual loss or injury to property.'").  Thus, negligence causation and defense doctrines  have  no play in Carmack Amendment  analysis, and it does not matter, for Carmack Amendment purposes, whether the underlying automobile accident precipitating RAP's  delay in transit in this case  was  caused by  unforeseeable or intervening  conduct of a third party drunk driver.  Because these are not legally valid defenses to a Carmack Amendment  claim, the court need not inquire further into their  factual predicate and summarily rejects them as a

9

defense to claim.

Finally, RAP's invocation of the "act of public authority" defense during oral argument upon the cross motions for summary judgment motions merits note. At this juncture of the proceedings, RAP argued that the conduct of the Illinois State Police in barricading the accident scene immediately after the crash may qualify as an "act of public authority" defense to the claim, to the extent the police effectively prevented RAP from recovering the load and making timely delivery through its own cover transport service. It urges that this intervening police conduct raises at least a genuine issue of material fact pertaining to application of the "public authority" defense which precludes entry of summary judgment. However, as noted by plaintiff in its contemporaneous objection to this argument, RAP did not raise this as an affirmative defense in its answer to plaintiff's complaint, nor did it raise this defense in its own motion for summary judgment or defense to the plaintiff's motion for summary judgment.

As an exception to the general rule of carrier liability for delay or damage in transit, the "act of public authority" defense operates an avoidance of claim, and, as such, constitutes an affirmative defense that must be specifically pled in a responsive pleading. An affirmative defense which is not specifically pled is waived. *Steger v General Electric Co.,* 318 F.3d 1066 (11th Cir. 2003); *Jones v Mills*, 656 F.2d 103 (5th Cir. 1981); *Funding Systems Leasing Corp. v Pugh*, 530 F.2d 91 (5th Cir. 1976).

RAP has not requested leave to amend its pleadings to add this affirmative defense pursuant to Fed. R. Civ. P. 15(a), nor has the issue been tried with the implied or express consent of the plaintiff pursuant to Fed. R. Civ. P. 15(b). Accordingly, the issue is not appropriately before the court, rendering it unnecessary for the court to examine whether the police conduct in question

qualifies as an "act of public authority" defense to plaintiff's Carmack Amendment claim and whether disputed issues of material fact attend to its application here.

Having met its burden of establishing a *prima facie* case under the Carmack Amendment, and having established that none of the recognized Carmack Amendment defenses are available to RAP, plaintiff is entitled to summary judgment upon its claim for consequential damages.  *See e.g.*
*Nipponkoa Ins. Co Ltd. v Norfolk Southern Railway Co.*, 2009 WL 3734068 (S.D.N.Y. 2009).

It is accordingly **ORDERED AND ADJUDGED**:

1. Plaintiff's motion for summary judgment [DE# 19] is **GRANTED.**

2. Defendant RAP's motion for summary judgment [DE# 27 ] is **DENIED**.

3. Final summary judgment pursuant to Rule 58 shall enter by separate order of the court.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 9th day of February, 2010.

Daniel T. K. Hurley
United States District Judge

cc.  All counsel